IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01670-NYW

TRAVIS MULLENIX,

    Plaintiff,

v.

DEMIAN LAPLANTE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Plaintiff Travis Mullenix's ("Plaintiff" or "Mr. Mullenix") Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion for TRO" or the "Motion"). [Doc. 32, filed August 26, 2021]. This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the Parties [Doc. 13], and the Order of Reference dated June 30, 2021 [Doc. 14]. The court has considered the Motion for TRO and associated briefing, the applicable case law, and the comments offered by counsel during the September 24, 2021 Motion Hearing. For the following reasons, the Motion for TRO is **DENIED**.

## FACTUAL BACKGROUND

    The following facts are derived from the operative Second Amended Complaint [Doc. 49], the Motion for TRO [Doc. 32], and the Response thereto [Doc. 36]. Plaintiff alleges that he and Defendant Demian LaPlante ("Defendant" or "Mr. LaPlante") began a romantic relationship in summer 2017 in New York City, New York. [Doc. 49 at ¶ 7]. Throughout the relationship, Mr. LaPlante paid for Mr. Mullenix's personal expenses, housing, travel, and other miscellaneous expenses. [*Id*. at ¶ 12]. During the relationship, Mr. LaPlante invited Mr. Mullenix to live in one

of Mr. LaPlante's New York residences, an apartment above an art gallery where Mr. Mullenix's art was being displayed, and Mr. Mullenix agreed. [*Id*. at ¶ 13]. Mr. Mullenix alleges that Mr. LaPlante became "increasingly possessive of Mr. Mullenix in 2017" and "started to display aggressive and alarming behavior." [*Id*. at ¶¶ 16, 21]. Mr. LaPlante's behavior included canceling a trip in the summer of 2017 "to spend more time with Mr. Mullenix"; "slapp[ing] Mr. Mullenix"; and "he would get intoxicated, verbally berate Mr. Mullenix, and subject Mr. Mullenix to physical domestic violence." [*Id*. at ¶¶ 17, 22–23]. Plaintiff and Defendant continued to have fraught physical and verbal interactions between 2018 and 2020, including property damage and police involvement. *See* [*id*. at ¶¶ 26–188].

In or around 2017 or 2018, Mr. LaPlante invited Mr. Mullenix to move into Mr. LaPlante's primary residence in New York (the "shared residence"). [*Id*. at ¶ 14]. Mr. Mullenix moved himself and his personal property, including several pieces of his artwork, into the shared residence. [*Id*. at ¶ 25; Doc. 32 at 2]. Mr. Mullenix's personal property at the shared residence "include hundreds of paintings, prints, drawings, jewelry, crystals, clothing, and other personal property." [Doc. 32 at 2]. Mr. Mullenix lived at the shared residence until early 2020, when he moved to Aspen, Colorado to reside in another residence owned by Mr. LaPlante. In December 2020, Mr. LaPlante was arrested in Colorado on charges of assault against Mr. Mullenix. [Doc. 49 at ¶ 188; Doc. 32 at 2]. After the arrest, the couple's relationship ended, and Mr. LaPlante retrieved Mr. Mullenix's key to the shared residence. [Doc. 32 at 2].

## PROCEDURAL BACKGROUND

Mr. Mullenix initiated this civil action in Colorado state court, in the Pitkin County District Court, on April 15, 2021. *See* [Doc. 1-1]. On June 17, 2021, Defendant removed this action to the United States District Court for the District of Colorado, invoking this court's diversity

2

jurisdiction pursuant to 28 U.S.C. § 1332.  [Doc. 1; Doc. 7].  On July 9, 2021, Mr. Mullenix filed Plaintiff's First Amended Complaint [Doc. 16].[1]  On October 1, 2021, Plaintiff filed the operative Second Amended Complaint (the "Second Amended Complaint") [Doc. 49] in which Plaintiff alleges, *inter alia*, he owns personal property ("Plaintiff's personal property") at a residence that Plaintiff and Defendant Demian LaPlante ("Defendant" or "Mr. LaPlante") shared in New York City, New York (the "shared residence") and that Defendant has barred Plaintiff access to such property.  *See* [Doc. 49 at ¶¶ 195–96].[2]  Mr. Mullenix asserts claims under Colorado common law for extreme and outrageous conduct ("Claim I"); assault ("Claim II"); battery ("Claim III"); intentional infliction of contractual obligations ("Count IV"); breach of contract ("Claims V and VI").  On October 4, 2021, Defendant filed a counterclaim against Plaintiff, asserting claims for invasion of privacy, assault, battery, conversion, and civil theft.  [Doc. 50].

On August 26, 2021, Plaintiff filed the instant Motion for TRO [Doc. 32].  Relevant to this instant Motion, Mr. Mullenix alleges that Mr. LaPlante has barred Mr. Mullenix access to the shared residence such that he has been unable to retrieve his personal property.  [Doc. 49 at ¶¶ 195–96; Doc. 32 at 3].  On August 26, 2021, counsel for Mr. LaPlante notified Mr. Mullenix that a moving company had removed his personal property from the shared residence to a storage unit on August 24, 2021.  [Doc. 32 at 3].  Mr. LaPlante and his counsel did not, however, provide further details about the move, including the storage unit, the contract for the storage unit, the

---

[1] Plaintiff also filed a redacted version of the First Amended Complaint [Doc. 27, filed August 4, 2021] pursuant to an Order of the court on August 3, 2021 [Doc. 24].

[2] Plaintiff filed the Second Amended Complaint [Doc. 49] pursuant to an Order of the court directing that Plaintiff file an amended complaint eliminating three paragraphs that contained privileged information.  [Doc. 47].  While Plaintiff filed the Motion for TRO based on the allegations in the First Amended Complaint [Doc. 16], those allegations are consistent with the allegations in the operative Second Amended Complaint [Doc. 49].  Therefore, the Motion for TRO is appropriately considered here.

receipt from the moving company, or a list of the items that were moved. [*Id.*]. Plaintiff requests the court enter a temporary protective order for the following relief: (1) limiting Defendant's destruction of evidence and Plaintiff's personal property; (2) that Defendant return all of Plaintiff's personal property that was removed from the shared residence; and (3) that all expenses to move Plaintiff's personal property be paid by Defendant and coordinated through Plaintiff. [Doc. 32 at 4–5]. Defendant filed his response to the Motion for TRO on September 3, 2021. [Doc. 36].

The court held a hearing on the Motion for TRO ("Motion Hearing") on September 24, 2021.[3] [Doc. 47]. At the Motion Hearing, the Parties presented arguments on the Motion for TRO, and the court heard testimony from an employee of the moving company and Chelsea Clark ("Ms. Clark"), an attorney who is representing Defendant in the separate, but related, domestic violence criminal matter. *See* [Doc. 47]. Having been advised of the premises, this Motion is ripe for review.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 65 authorizes the court to enter preliminary injunctions and issue temporary restraining orders. Fed. R. Civ. P. 65(a), (b). "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2951 (3d ed.). Because Defendant has notice of the Motion for TRO, and, indeed, filed a Response [Doc. 36], the court treats the Motion for TRO as a motion for preliminary injunction.

---

[3] The court initially scheduled a Motion Hearing for September 10, 2021. *See* [Doc. 33]. On September 3, 2021, Plaintiff filed an Unopposed Motion to Continue the Motion Hearing, [Doc. 37], which the court granted [Doc. 38].

"Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018). A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). It is well-settled that the primary goal of a preliminary injunction is to preserve the pretrial status quo. *See, e.g., RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "Status quo" is defined to be the last uncontested status between the parties that preceded the controversy until the outcome of the final hearing. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). Therefore, courts view the following types of injunctions with caution: (1) preliminary injunctions that alter the status quo; (2) preliminary injunctions that require the nonmoving party to take affirmative action ("mandatory preliminary injunctions"); and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial. *RoDa Drilling*, 552 F.3d at 1208 (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *affirmed,* 546 U.S. 418 (2006)).

Movants who seek a disfavored injunction must meet a higher standard and demonstrate a *substantial* likelihood of success on the merits, as well as a heightened showing of the other three elements. *Id.* (citing *O Centro*, 389 F.3d at 980).[4] *See also Fundamentalist Church of Jesus Christ*

---

[4] *Cf. Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995) (holding, under a "modified likelihood of success" requirement, if the movant has satisfied his or her burden with respect to the irreparable injury, balance of equities, and public interest factors, "the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate

5

*of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (the movant must show that the factors "weigh heavily and compellingly" in his or her favor). The court may grant a disfavored injunction only if the moving party demonstrates that the "exigencies of the case require extraordinary interim relief," and satisfies the heightened burden. *RoDa Drilling*, 552 F.3d at 1209 (citing *O Centro*, 389 F.3d at 978). "The determination of whether an injunction is mandatory as opposed to prohibitory can be vexing," but the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that a mandatory injunction affirmatively requires the non-moving party to act in a particular way. *Schrier*, 427 F.3d at 1261. Whether to issue a preliminary injunction lies in the sound discretion of the trial court. *See RoDa Drilling*, 552 F.3d at 1208 (citations omitted).

## ANALYSIS

### I.   Standard of Review

Mr. Mullenix did not seek preliminary injunctive relief at the inception of this case, and instead claims that Mr. LaPlante unilaterally caused Mr. Mullenix's personal property to be moved from their formerly shared residence to a storage facility after the inception of the action. *See generally* [Doc. 32]. Plaintiff asserts Defendant "has taken what he believes is Mr. Mullenix's property and is believed to be the contested property in this matter and is depriving Mr. Mullenix access to that property." [Doc. 32 at 5]. Plaintiff also states the property is in "an unknown condition and Mr. Mullenix does not know the location of the items" and "does not have access to the items at the property." [*Id*. at 4–5]. Plaintiff contends that "[w]ithout immediate intervention

---

investigation."). *See Colo. Rail Passenger Ass'n v. Federal Transit Admin.*, Nos. 09–cv–01135–REB, 10–cv–00462–REB, 2010 WL 749790 (D. Colo. Mar. 3, 2010) ("'assuming' the *Walmer* standard is still viable.").

by the [c]ourt, Mr. Mullenix will suffer irreparable harm." [*Id.*] As a result, Mr. Mullenix now requests a preliminary injunction to (1) "limit Mr. LaPlante's further destruction of evidence and property"; (2) requiring "that all of Mr. Mullenix's personal property that was removed from the residence on August 24, 2021 be returned to the residence within 72 hours"; and (3) requiring "that all moving of [Plaintiff's] personal property is paid for by Defendant but coordinated through Mr. Mullenix so that he can ensure the safety of the personal property." [Doc. 32 at 5].

In Response, Defendant first asserts that Plaintiff cannot carry his burden to demonstrate why a preliminary injunction is needed to prevent irreparable harm because Plaintiff has not established any harm "by his belongings being made available to him in a nearby storage facility" rather than at the shared residence. [Doc. 36 at 2–3]. Second, Defendant argues that Plaintiff's "proposed relief is wholly at odds with the relief he is seeking in his Complaint" because "Plaintiff alleges that he suffered damages *because he left his property*" at the shared residence, and yet Plaintiff is requesting that his personal property be first returned to the shared residence before Plaintiff can retrieve them. [*Id.* at 3 (emphasis in original)]. Third, Defendant contends an injunction would result in greater harm to Mr. LaPlante because he would be "forced to continue storing Plaintiff's property at the [shared residence], free-of-charge and against his will." [*Id.*].

While the Motion for TRO does not identify the specific type of injunction—i.e., prohibitory or mandatory—that Plaintiff is seeking, in response to the court's inquiry at oral argument, Plaintiff asserted that he was seeking to "maintain the status quo." [Doc. 51 at 96:5–6]. The Tenth Circuit has recognized that the characterization of an injunction as prohibitory or mandatory can be vexing. *Schrier*, 427 F.3d at 1260. But here, it is undisputed that Plaintiff seeks to have the court compel Defendant to take affirmative action—i.e, organize the return of Plaintiff's personal property back to the shared residence; coordinate such movement through Mr.

7

Mullenix, and pay for the same. Thus, this court is inclined to find that Mr. Mullenix seeks a mandatory injunction, triggering the higher burden of making "strong showing" with regard to the likelihood of success on the merits and with regard to the balance of harms. *See Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016). However, this court need not resolve the issue, because under either standard, Mr. Mullenix has failed to carry his burden to justify the preliminary injunction he seeks.

## II. Application

As an initial matter, while Plaintiff first requests that the court "limit Mr. LaPlante's further destruction of evidence and property," Plaintiff does not explain what evidence or property has *already* been destroyed to allow the court to determine whether to enjoin any "further destruction" of the same. Indeed, Plaintiff does not claim that Defendant has destroyed any evidence that is relevant to the claims and defenses set forth in this action; rather, he asserts only that Defendant has moved Plaintiff's personal property. *See generally* [Doc. 32]. Absent any indication that Defendant is destroying evidence, this court will not require Defendant to take an action to address conduct which neither party has addressed in their briefings. *See* [*id.*; Doc. 36].[5] Thus, the court will focus its attention on Plaintiff's requests (1) that his items "be returned" to the shared residence; (2) that such return be coordinated through Mr. Mullenix; and (3) that Defendant be required to cover the costs of the same. [Doc. 32 at 5].

Plaintiff bears the burden of persuasion as to each of the four elements of injunctive relief. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Courts have consistently

---

[5] Additionally, both Parties are represented by experienced counsel and, therefore, are aware of their respective discovery obligations. *See, e.g., Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) ("[P]utative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation").

noted that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and therefore the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *N.M. Dep't of Game and Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (citations omitted)). Thus, this court begins by considering whether Mr. Mullenix has demonstrated irreparable harm.

### a. Irreparable Harm

A plaintiff establishes irreparable harm by demonstrating "a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling*, 552 F.3d at 1210 (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). *See also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (The grounds for injunctive relief "in the federal courts has always been irreparable injury and the inadequacy of legal remedies," and "to protect property rights against injuries otherwise irremediable") (citations omitted). "[T]o satisfy this factor of the preliminary injunction test, a movant must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. 2007). The injury cannot be speculative but "must be certain, great, actual and not theoretical." *Heideman*, 348 F.3d at 1189 (internal quotations and citations omitted). In addition, conclusory statements are insufficient to establish irreparable harm. *Dominion Video Satellite*, 356 F.3d at 1261. The court must also determine if the harm is likely to take place before a ruling on the merits. *RoDa Drilling*, 552 F.3d at 1210.

Plaintiff argues he will suffer irreparable harm without the court's intervention, and that a preliminary injunction is necessary to "stop the further destruction of evidence and valuable

9

property." [Doc. 32 at 5].[6] Plaintiff also submitted an affidavit which states that "[a] restraining order is needed to ensure the safety of my belongings and property at issue in this case and ensure my safety, that I am able to retrieve my items in a safe procedure." [Doc. 32-2]. At the Motion Hearing, Plaintiff's counsel further explained that Plaintiff has experienced "irreparable harm" because (a) he is generally traumatized as "the victim in a domestic violence case"; and (b) he has incurred a financial burden "based on [D]efendant's actions of moving [Plaintiff's] items without his knowledge or consent, storing them in a facility that he does not have access to, to investigate them, and basically forcing him into a position where he cannot have those items on his own terms." [Doc. 51 at 99:4–15]. In response, Defendant asserts that Plaintiff's allegations that he was deprived access to his personal property are without merit because counsel for Defendant provided counsel for Plaintiff with the location of Plaintiff's property and access to the same. [Doc. 36 at 10]. Upon review of the evidence before it, this court finds that Plaintiff has failed to carry his burden to establish irreparable harm.

*Harm*. While the court is sensitive to the domestic disputes alleged by the parties, *see generally* [Doc. 49; Doc. 50], the court concludes that Plaintiff has failed to carry his burden to establish that a harm has or will occur, i.e., that he has been deprived access to his personal property or that he cannot repossess those items on his own terms. As Defendant points out in his Response, on August 26, 2021—the day the Motion for TRO was filed—counsel for Defendant emailed counsel for Plaintiff and provided him the location of Plaintiff's property and the ability to access it any time he chooses:

> Mr. Mullenix's personal property has now been professionally moved from 5 Centre Market to a climate-controlled storage location. All items were properly

---

[6] As discussed above, Plaintiff does not explain what evidence or property has *already* been destroyed, nor does he claim that Defendant has destroyed any evidence at all; rather, he asserts only that Defendant has moved Plaintiff's personal property. *See generally* [Doc. 32].

10

> wrapped and boxed prior to the move by the moving company. The cost of this to Mr. LaPlante was around $3,000. Mr. Mullenix can have access to his property at the storage location anytime he wishes. … The items are stored at a storage facility at 60-20 59th Place, Queens[,] New York, 11378.

[Doc. 36 at 7; Doc. 36-4 at 8–10]. Likewise, after the Motion for TRO was filed, counsel for Defendant provided counsel for Plaintiff with a memorandum prepared by Ms. Clark which documents the transfer of Plaintiff's personal property from the shared residence to the storage location. *See* [Doc. 36-1; Doc. 36-4 at 6–7]. Further, counsel for Defendant notified Plaintiff's counsel that he "will have 100% ability to arrange for the pick-up" of Plaintiff's personal property; and although "he will likely not be able to go in to open boxes and inspect them on-site …he can of course inspect the property wherever he decides to move it – and, again, please let us know if you believe anything is missing, damaged, etc." [Doc. 36-4 at 5]. There is no evidence in the record that the any of the items were damaged or lost during the move. There was also no evidence that Plaintiff attempted to inspect his personal property because he "has concerns about the integrity and completeness of this move and would like to verify his personal property is safe," [Doc. 36-4 at 2–4], and was denied the ability to do so at the storage facility or was subject to any type of abuse while attempting to retrieve it. Finally, there is no evidence—beyond speculation—that any of these harms would befall Plaintiff should he attempt to move his belonging from the storage facility.[7]

---

[7] It appears that Plaintiff's proposed relief—that his personal property *first* be returned to the shared residence until such time that Plaintiff receives a court order allowing him to enter the shared residence to *then* inspect and remove his property—would create more obstacles to Plaintiff's ability to collect his personal property and introduce the additional risk of being in an environment that might be emotionally triggering and/or lead to some type of encounter with Defendant.

***Irreparable.*** Even assuming that Plaintiff has been deprived access to his personal property at the storage facility or is unable to retrieve his items safely—which the record does not support—Mr. Mullenix has not established that there is a significant risk that he will experience harm that cannot be compensated after the fact by money damages. *See First W. Cap. Mgmt. Co.*, 874 F.3d at 1141. To the extent Plaintiff claims that he is harmed by the cost of moving his items, he fails to explain why an award of monetary damages would not adequately compensate him for any damages suffered.

Thus, this court finds that Mr. Mullenix has failed to carry his burden of establishing irreparable harm. This finding alone would be a sufficient basis for denial of the requested injunctive relief. *See People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more.") (quoting *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)). However, this court finds that it is appropriate to briefly address the factor of likelihood of success on the merits—which was not addressed by Plaintiff in his briefing—because of its fundamental nature.

      **b.**      **Success on the Merits**

"[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir.1975)). At the Motion Hearing, Plaintiff's counsel argued the preliminary relief Plaintiff seeks relates to his claim of extreme and outrageous conduct (Claim I). [Doc. 51 at 97:15–19]. Specifically, Plaintiff argues that Ms. Clark misrepresented to the moving company that she, acting on behalf of Defendant, was authorized to move Plaintiff's personal

12

property, and therefore deprived Plaintiff of access to his personal property. [*Id*. at 97:18–98:4]. But Ms. Clark's actions after the inception of this action are not relevant to the merits of Plaintiff's extreme and outrageous conduct claim, nor any of his remaining claims for that matter. To the contrary, Mr. Mullenix's Motion for TRO is based on new assertions of mistreatment that are entirely different from the claims raised and the relief requested in the operative Second Amended Complaint [Doc. 49].[8] Indeed, Plaintiff's extreme and outrageous conduct claim is based explicitly on "conduct [that] happened while Defendant and Mr. Mullenix engaged in an intimate relationship," [*Id.* at ¶ 209]; Plaintiff acknowledges the relationship ended after Mr. LaPlante was arrested on December 14, 2020, [Doc. 32 at 2]; and Plaintiff's personal property was not moved from the shared residence until August 24, 2021, [*id*. at 1]. And while the Second Amended Complaint alleges that Plaintiff has been unable to access his personal property at the shared residence, [Doc. 49 at ¶¶ 195–96], those allegations are unrelated to his claim for outrageous conduct; are not included in any demand for relief; and cannot provide the basis for a preliminary injunction in this lawsuit. *See Lystn, LLC v. Food & Drug Admin.*, No. 19-cv-01943-PAB-KLM, 2019 WL 6038072, at *2 (D. Colo. Nov. 14, 2019) (concluding the plaintiff could not "demonstrate a likelihood of success on the merits – as required for the issuance of a temporary restraining order or a preliminary injunction – where the merits claims are unrelated to the relief sought in the injunctive relief motion"); *Alley v. Aurora Loan Servs. LLC*, No. 10-cv-02163-REB-CBS, 2011 WL 3799035, at *14 (D. Colo. July 21, 2011), *report and recommendation adopted*, 2011 WL 3799585 ("[T]o obtain preliminary injunctive relief, the moving party bears the burden of

---

[8] The allegations relevant to Plaintiff's extreme and outrageous conduct claim (Count 1) in the operative Second Amended Complaint [Doc. 49] are identical to the allegations relevant to the extreme and outrageous conduct claim in the First Amended Complaint [Doc. 27, filed August 4, 2021], which was the operative complaint at the time Plaintiff filed the instant Motion for TRO on August 26, 2021.

13

establishing, a[m]ong other elements, that he or she has a likelihood of success on the merits *of the underlying claims*.") (emphasis added); *cf. Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (denying a motion for preliminary injunction where the plaintiff's motion was based on "new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his … medical treatment lawsuit"); *Army Corps of Engineers*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("Granting a preliminary injunction based on a showing that the plaintiffs were likely to succeed in establishing a violation of an ancillary court order, rather than a showing that they were likely to succeed on the merits of any of their claims, was a misapplication of the legal standard for likelihood of success on the merits, and thus an abuse of discretion.").

Even assuming without deciding, for purposes of analysis, that the balance of hardships and the public interest weighed in Plaintiff's favor, these considerations are outweighed in this instance by the absence of a showing of irreparable harm and the lack of success on the merits.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Plaintiff Travis Mullenix's Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. 32] is **DENIED**.

DATED:  October 13, 2021              BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge