IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01670-NYW

TRAVIS MULLENIX,

    Plaintiff,

v.

DEMIAN LAPLANTE,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Demian LaPlante's ("Defendant" or "Mr. LaPlante") Partial Motion to Dismiss Plaintiff's Claim Nos. 2, 3, 5, and 6 ("Motion to Dismiss" or the "Motion"). [Doc. 19, filed July 21, 2021]. This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the Parties [Doc. 13], and the Order of Reference dated June 30, 2021 [Doc. 14]. The court has considered the Motion to Dismiss and associated briefing, and the applicable case law. For the following reasons, the Motion to Dismiss is **DENIED**.

### FACTUAL BACKGROUND

The following facts are derived from the Second Amended Complaint [Doc. 49] and deemed true for the purposes of the instant Motion.[1] Plaintiff and Defendant Demian LaPlante

---

[1] Plaintiff filed the Second Amended Complaint [Doc. 49] pursuant to an Order of the court directing that Plaintiff file an amended complaint eliminating three paragraphs that contained privileged information. [Doc. 47]. While Plaintiff filed the Motion to Dismiss based on the allegations in the First Amended Complaint [Doc. 16], those allegations are consistent with the allegations in the operative Second Amended Complaint [Doc. 49]. Therefore, the Motion to Dismiss is appropriately considered.

("Defendant" or "Mr. LaPlante") began a romantic relationship in summer 2017 in New York City, New York. [Doc. 49 at ¶ 7]. Throughout the relationship, Mr. LaPlante paid for Mr. Mullenix's personal expenses, housing, travel, and other miscellaneous expenses. [*Id*. at ¶ 12]. During the relationship, Mr. LaPlante invited Mr. Mullenix to live in one of Mr. LaPlante's New York residences, an apartment above an art gallery where Mr. Mullenix's art was being displayed, and Mr. Mullenix agreed. [*Id*. at ¶ 13]. Mr. Mullenix alleges that Mr. LaPlante became "increasingly possessive of Mr. Mullenix in 2017" and "started to display aggressive and alarming behavior." [*Id*. at ¶¶ 16, 21]. Mr. LaPlante's behavior included canceling a trip in the summer of 2017 "to spend more time with Mr. Mullenix"; "slapp[ing] Mr. Mullenix"; and "he would get intoxicated, verbally berate Mr. Mullenix, and subject Mr. Mullenix to physical domestic violence." [*Id*. at ¶¶ 17, 22–23].

In or around 2017 or 2018, Mr. LaPlante invited Mr. Mullenix to move into Mr. LaPlante's primary residence in New York (the "Shared Residence"). [*Id*. at ¶ 14]. Mr. Mullenix moved himself and his personal property, including several pieces of his artwork, into the Shared Residence. [*Id*. at ¶ 25]. Mr. Mullenix lived at the Shared Residence until early 2020, when he moved to Aspen, Colorado to reside in another residence owned by Mr. LaPlante. [*Id*. at ¶¶ 72–79]. Plaintiff and Defendant continued to have fraught physical and verbal interactions between 2018 and 2020, including property damage and police involvement. *See* [*id*. at 26–188]. For instance, Plaintiff alleges that, on December 13, 2020, "Defendant grabbed Mr. Mullenix by his head and chest and slammed him down … [,] dragged Mr. Mullenix by his hair across the ground covered in glass and ceramic shards… [and] stomped on Mr. Mullenix's chest, legs, and feet." [*Id*. at ¶¶ 146, 156, 159, 163]. Following this incident, Mr. LaPlante was arrested on charges of assault

2

against Mr. Mullenix. [Doc. 49 at ¶ 188]. After the arrest, the couple's relationship ended. *See* [*id*. at ¶¶ 197–202]; *see also* [Doc. 32 at 2].

Mr. Mullenix also alleges that he and Mr. LaPlante started a jewelry and fashion business together during their relationship. [Doc. 49 at ¶¶ 128–35]. In the course of the business, Plaintiff and Defendant ordered tens of thousands of dollars' worth of materials "to design and produce fashion products with the understanding that Defendant would pay those bills," which Defendant subsequently refused to pay. [*Id*. at ¶¶ 189–190]. Mr. Mullenix alleges that he is now responsible for paying "the entire bill" and that he and Defendant also owe additional funds to other third parties. [*Id*. at ¶¶ 190–94].

## PROCEDURAL BACKGROUND

On April 15, 2021, Mr. Mullenix initiated this civil action in Colorado state court, in the Pitkin County District Court, on April 15, 2021. *See* [Doc. 1-1]. On June 17, 2021, Defendant removed this action to the U.S. District Court for the District of Colorado, where the undersigned magistrate judge was assigned directly to this matter. [Doc. 1; Doc. 7]. The Parties consented to the jurisdiction of the undersigned magistrate judge on June 29, 2021. [Doc. 13]; *see also* [Doc. 14]. On July 9, 2021, Mr. Mullenix filed Plaintiff's First Amended Complaint [Doc. 16].[2] On October 1, 2021, Plaintiff filed the operative Second Amended Complaint (the "Complaint") [Doc. 49] in which he asserts six claims against Defendant: (1) extreme and outrageous conduct ("Claim One"); (2) assault ("Claim Two"); (3) battery ("Claim Three"); (4) intentional interference with contractual obligations ("Claim Four"); (5) breach of contract with respect to funds owed to the third parties ("Claim Five"); and (6) breach of contract with respect to a "verbal contract" wherein

---

[2] Plaintiff also filed a redacted version of the First Amended Complaint [Doc. 27, filed August 4, 2021] pursuant to an Order of the court on August 3, 2021 [Doc. 24]. Ultimately, the First Amendment Complaint was superseded by the operative Second Amended Complaint. [Doc. 49].

3

Defendant agreed "to pay to Mr. Mullenix $3,300 a month for his work starting on or around September 2019" ("Claim Six"). [Doc. 49 at 16–19]. [3]

On July 21, 2021, Defendant filed the instant Motion to Dismiss, seeking dismissal of Claim Two, Claim Three, Claim Five, and Claim Six. [Doc. 19]. Defendant asserts that Plaintiff's Second and Third Claims for assault and battery, respectively, are barred, in part, by a one-year statute of limitations; and Plaintiff's Fifth and Sixth Claims for breach of contract are "barred, in whole or in part, by the statute of frauds." [*Id*. at 1]. In Response [Doc. 28, filed August 11, 2021], Plaintiff states his assault and battery claims (Claims Two and Three) constitute domestic violence under Colorado law, and therefore are subject to a six-year statute of limitations under C.R.S. § 13-80-103.6. [Doc. 28 at 2]. With respect to his Fifth Claim for breach of contract, Plaintiff asserts this claim overcomes the statute of frauds because they fall under the "specially manufactured goods" and "partial performance" exceptions to Colorado's statute of frauds. *See* [*id*. at 3]. Additionally, as to Plaintiff's Sixth Claim for breach of contract, he argues this claim also overcomes the statute of frauds because the contract to pay Plaintiff's living expenses "was renewed within one year of the claim, Mr. Mullenix reasonably relied on the contract, and it was put into writing." [*Id*. at 4]. In Defendant's Reply [Doc. 34, filed August 30, 2021], he argues Plaintiff "overlooks that the allegations he makes … establish the applicability of the one-year statute of limitations to his assault and battery claims"; Plaintiff has not pled the facts necessary to support the exceptions to the statute of frauds as to Claim Five; and, with respect to Claim Six,

---

[3] Plaintiff filed the Second Amended Complaint [Doc. 49] pursuant to an Order of the court directing that Plaintiff file an amended complaint eliminating three paragraphs that were at issue between the Parties. [Doc. 47, filed September 24, 2021]. While Plaintiff filed the Motion to Dismiss based on the allegations in the First Amended Complaint [Doc. 16], those allegations and claims are consistent with the allegations and claims in the operative Second Amended Complaint [Doc. 49]. Therefore, the Motion to Dismiss is appropriately considered here.

none of the exceptions to the statute of frauds that Plaintiff seeks to invoke can save his claim. *See* [Doc. 34].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulistic formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.  Claim Two and Claim Three: Assault and Battery

First, Defendant seeks dismissal of Plaintiff's Claims Two and Three on the basis that each claim is subject to a one-year statute of limitations under Colorado law, C.R.S. § 13-80-103(1)(a). [Doc. 19 at 1–2, 4–7]. Specifically, Defendant asserts that Plaintiff filed his original Complaint in

this action on April 15, 2021 and, therefore, "can only base his claims for assault and battery on alleged conduct that occurred within the year preceding filing—the year between April 15, 2020 and April 15, 2021." [*Id*. at 4]. Additionally, Defendant argues that Plaintiff's attempts to invoke a six-year statute of limitations under C.R.S. 13-80-103.6(1)—by alleging that "[t]hroughout the relationship, Mr. Mullenix was psychologically and emotionally unable to acknowledge the act of domestic violence and resulting harm," [Doc. 49 at ¶¶ 216, 223]—are insufficient to survive dismissal. [*Id*. at 5]. That statute provides as follows:

> Notwithstanding any other statute of limitations specified in this article 80, or any other provision of law that can be construed to reduce the statutory period set forth in this section, **any civil action to recover damages caused by an act of domestic violence, as defined in section 14-10-124 (1.3)(a), must be commenced within six years after a disability has been removed for a person under disability, as such term is defined in subsection (2) of this section, or within six years after a cause of action accrues**, whichever occurs later, and not thereafter; except that in no event may any such civil action be commenced more than twenty years after the cause of action accrues.

C.R.S. § 13-80-103.6(1) (emphasis added).

In the Motion, Defendant argues that Plaintiff's allegations regarding his comprehension of the abuse are conclusory and contradicted by Plaintiff's other, more specific, allegations where "Plaintiff asserts that he was aware of the alleged abuse, feared for his safety, distanced himself from the alleged abuse, and even reported the alleged abuse to a third party." [Doc. 19 at 5]; *see also* [Doc. 49 at ¶¶ 20–22, 38–48; 81–83; 91–92; 103–115; 117–121]. Therefore, Defendant contends, "Plaintiff's conclusory allegation that he was for unstated reasons subjectively unable to acknowledge the alleged abuse" should not be taken as true; and "Plaintiff's claims for assault and battery are barred to the extent he is attempting to base these claims on alleged conduct that occurred prior to April 15, 2020—the date one year prior to Plaintiff's filing of his original complaint." [Doc. 19 at 6–7].

6

Plaintiff responds that his claims are premised on "the basis that Defendant abused Mr. Mullenix physically, psychologically, and verbally"; and, in any event, Plaintiff's "comprehension of abuse is not relevant" because "all proposed acts of domestic violence accrued within 6 years of Plaintiff's complaint." [Doc. 28 at 2]. Plaintiff also argues that his allegations regarding the relationship and the abuse he suffered meet the definition of "domestic violence" under Colorado law, C.R.S. § 14-10-124(1.3)(a). [*Id*. at 2–3]. The court respectfully agrees with Plaintiff and finds that Plaintiff's allegations sufficiently state claims for assault and battery that are not barred by the statute of limitations.

***Domestic Violence.*** The Second Amended Complaint alleges that Plaintiff and Defendant entered their "romantic relationship" in 2017, [Doc. 49 at ¶ 7], and details various acts of abuse and threats of violence between the Parties thereafter, *see* [*id*. at ¶¶ 26–188]. Notably, Plaintiff alleges that "Defendant's numerous verbal, psychological, and physical attacks of Mr. Mullenix from 2017 through 2020 intended to cause an offensive or harmful physical contact with the Plaintiff or intended to place the Plaintiff in apprehension of such contact, [*id*. at ¶ 211]; and "[a]t all times in question, Defendant and Mr. Mullenix were in an intimate relationship," [*id*. at ¶¶ 214, 221]. Defendant does not contest (nor could he at this stage) the factual veracity that Plaintiff and Defendant were involved in an intimate relationship or the substance of his conduct. I find that Plaintiff has pleaded sufficient facts to state cognizable assault and battery claims under Federal Rule of Civil Procedure 8(a).

***Applicable Statute of Limitations***. Rather, Defendant's primary issue is with the statute of limitations related to Plaintiff's claims, and whether Plaintiff has set forth allegations sufficient to invoke the six-year statute of limitations under C.R.S. § 13-80-103.6(1)—as opposed to the one-year statute of limitations argued by Defendant. As reflected above, Colorado's six-year statute

7

of limitations for domestic violence-related claims generally applies in two situations: "[1] after a disability has been removed for a person under disability … *or* [2] within six years after a cause of action accrues, whichever occurs later, and not thereafter." C.R.S. § 13-80-103.6(1) (emphasis added). The statute defines "person under disability" to include any person who "[i]s **psychologically or emotionally unable to acknowledge the act of domestic violence and the resulting harm** that is the basis of the civil action." C.R.S. § 13-80-103.6 (2)(a)(II) (emphasis added). It is this definition of "person under disability" which Defendant contends does not apply to Plaintiff, thus subjecting his assault and battery claims to a one-year statute of limitations. *See, e.g.*, [Doc. 34 at 2 ("Per Plaintiff, '[t]hroughout the relationship, Mr. Mullenix was psychologically and emotionally unable to acknowledge the act of domestic violence and the resulting harm.' It is through this conclusory allegation—asserted in both the assault claim and the battery claim—that Plaintiff attempts to trigger the six-year statute of limitations.") (citation omitted)].

This court must apply Colorado law in determining how best to interpret a Colorado statute in a case resting on diversity jurisdiction. *See Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1237 (10th Cir. 2018) (citing *Parish Oil Co., Inc. v. Dillon Companies, Inc*., 523 F.3d 1244, 1248 (10th Cir. 2008) ("As we are sitting in diversity and construing a Colorado statute, we must give it the meaning it would have in the Colorado courts.")). Colorado courts must first look to the plain language of a statute to interpret it, and if the plain language is clear and unequivocal, it must be applied as written. *See Lombard v. Colorado Outdoor Educ. Ctr., Inc*., 187 P.3d 565, 570 (Colo. 2008) ("We look first to the statute's plain language, and if it is clear and unambiguous on its face, we look no further and apply the statute as it is written."). The plain language of C.R.S. § 13-80-103.6(1) states that the six-year statute of limitations applies to a person's claims *either* "after a disability has been removed for a person under disability … *or* within six years after a

8

cause of action accrues, *whichever occurs later*." C.R.S. § 13-80-103.6(1) (emphasis added). While Plaintiff's allegations regarding his ability to comprehend the abuse mirrors one of the definitions of "person under disability," *compare* [Doc. 49 at 216, 223] *with* C.R.S. § 13-80-103.6 (2)(a)(II), that is of no consequence at this stage in the proceedings, particularly because all of Plaintiff's allegations of domestic violence began in 2017—which is well within the last six years.

Accordingly, I find that dismissal of Plaintiff's assault and battery claims based on the statute of limitations is not appropriate at this stage in the proceedings.

## II.     Claim Five: Breach of Contract

Next, Defendant seeks dismissal of Plaintiff's Claim Five for breach of contract, arguing that it is "barred, in whole, by the statute of frauds" because "Plaintiff bases claim No. 5 on contracts for goods totaling approximately $60,000," and "there is no allegation of any writing signed by Mr. LaPlante that evidence these purported contracts." [Doc. 19 at 7]. Under Colorado law, "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made." C.R.S. § 4-2-201(1).

In response, Plaintiff forwards two arguments. First, Plaintiff asserts that his contract claim falls under the "specially manufactured goods" exception to the statute of frauds, which provides that a contract that is not in writing is enforceable

> [i]f the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller … has made either a substantial beginning of their manufacture or commitments for their procurement.

C.R.S. § 4-2-201(3)(a). According to Plaintiff, the allegation that he and Defendant "ordered over $67,000 worth of material to design and produce fashion products" meet the criteria necessary to satisfy the "specially manufactured goods" exception to the statute of frauds. [Doc. 28 at 3–4

9

(citing *Colorado Carpet Installation, Inc. v. Palermo*, 668 P.2d 1384, 1389 (Colo. 1983) (setting forth four elements of the "specially manufactured goods" exception)]. Second, Plaintiff argues that "an oral agreement is excepted from the statute of frauds by reason of the doctrine of part performance" and cites to C.R.S. § 4-2-201(3)(c) in support, which states that a contract that does not satisfy the "writing" requirement is enforceable "[w]ith respect to goods for which payment has been made and accepted or which have been received and accepted." [Doc. 28 at 4].

I find Plaintiff's arguments unavailing. Plaintiff has not pled any facts in the Complaint to support the exceptions he now argues apply to his claims. First, Plaintiff sets forth four elements of the "specially manufactured goods" exception to the statute of frauds, two of which are that the goods (1) are specially made for the buyer, and (2) are not suitable for sale to others by the manufacturer. *See* C.R.S. § 4-2-201(3)(a); *see also Palermo*, 668 P.2d at 1389. Plaintiff, however, does not allege in the Complaint that the goods at issue were specially manufactured or unsuitable for sale to others, despite Plaintiff's present assertions otherwise. *Compare* [Doc. 49 at ¶¶ 189–194] *with* [Doc. 28 at 3–4].

Second, while Plaintiff argues that "an oral agreement is excepted from the statute of frauds," [Doc. 28 at 3], nowhere in the Complaint does Plaintiff allege that the agreement(s) at issue was made orally. *See* [Doc. 49 at ¶¶ 189–94; *id*. at 18–19]. Relatedly, Plaintiff fails to identify any allegations in the Complaint that support the applicability of the "partial performance" exception to the statute of frauds, C.R.S. § 4-2-201(3)(c). As reflected above, the "partial performance" exception to the statute of frauds provides that a contract that does not satisfy the "writing" requirement is enforceable "[w]ith respect to goods [1] for which payment has been made and accepted or [2] which have been received and accepted." C.R.S. § 4-2-201(3)(c). However, Plaintiff specifically alleges that "Defendant refused to pay for any previously ordered

10

items," [Doc. 49 at ¶ 189], thus no "payment has been made and accepted" under C.R.S. § 4-2-201(3)(c). Additionally, while Plaintiff alleges that he and Defendant *ordered* the goods at issue, [*id*.], the allegations in the Complaint do not reflect that such goods were "received and accepted" by the Parties. *See, e.g.,* [Doc. 49 at 19 ("The vendors substantially performed their duties.")].

Notwithstanding the foregoing deficiencies, I nevertheless find that dismissal is not warranted at this juncture. The statute of frauds is an affirmative defense. Fed. R. Civ. P. 8(c). Dismissal of a cause of action based on an affirmative defense is proper at the motion to dismiss phase only when it is clear from the face of the operative pleading. *See VanLandingham v. Grand Junction Reg'l Airport Auth*., 46 F. Supp. 3d 1119, 1124 (D. Colo. 2014), aff'd, 603 F. App'x 657 (10th Cir. 2015). As Defendant correctly points out, "Plaintiff bases claim No. 5 on contracts for goods totaling approximately $60,000." [Doc. 19 at 7 (emphasis added)]; *see also* [Doc. 49 at 18–19]. Plaintiff does not specify that his breach of contract claim is based on a single agreement—rather, Plaintiff implies there are *multiple* agreements at issue. *See* [*id*.; *id*. at ¶¶ 189–93]. Further, Plaintiff does not state the amount that each agreement was worth; instead, he indicates that, when added together, the total amount of the multiple agreements was over $60,000. *See* [*id*. at 189–93]. Without the knowledge of how much each agreement was worth—including whether any single agreement was for less than five hundred dollars—Defendant's statute-of-frauds argument is premature with respect to Plaintiff's Claim Five. Accordingly, the court denies Defendant's Motion with respect to this claim.

### III.   Claim Six: Breach of Contract

Finally, Defendant seeks to dismiss Plaintiff's Claim Six for breach of contract, arguing similarly that it is "barred, in whole, by the statute of frauds" because "Plaintiff alleges that Mr. LaPlante agreed to pay Plaintiff $3,300 per month for a period extending beyond a year." [Doc.

11

19 at 8]. Colorado's statute of frauds provides in relevant part that "[e]very agreement that by the terms is not to be performed within one year after the making thereof" is void. C.R.S. § 38-10-112(a). Defendant contends that "Plaintiff includes no allegation of any writing signed by Mr. LaPlante that evidences the alleged contract to pay Plaintiff $3,300 per month for a period greater than one year," and therefore this claim must be dismissed. [Doc. 19 at 8–9].

In response, Plaintiff advances three reasons why the statute of frauds does not bar Claim Six. First, Plaintiff contends that there were oral renewals of the alleged agreement at issue because "Defendant made promises to pay Mr. Mullenix $3,300 a month for his work on their business in September 2019, February 2020, and in the fall of 2020." [Doc. 28 at 4–5 (citations omitted)]. Second, Plaintiff asserts that he "relied on this oral contract by moving to Colorado with Defendant on the premise that he would be paid $3,300 a month," and "that reliance forgoes the application of the statute of frauds." [*Id*. at 5]. Third, Plaintiff asserts that the agreement was nevertheless put in writing because Defendant "relayed his intent to pay Mr. Mullenix in their business plan and budget," which document "was then given to Defendant's trust." [Doc. 28 at 4–5]. In the Reply, Defendant counters that Plaintiff's "[c]laimed 'oral renewal' of contract is irrelevant"; his "claims of 'reliance' or 'partial performance' do not take the alleged contract outside of the [s]tatute of [f]rauds"; and the Complaint "fails to allege that [the] contract was 'in writing' and 'signed' by Mr. LaPlante." *See* [Doc. 34 at 6–11]. I find that, when viewed in the light most favorable to Plaintiff, the statute of frauds does not bar Plaintiff's claims *as stated in the Complaint*, and thus Plaintiff's Claim Six states a sufficient claim for breach of contract.

The Colorado Supreme Court construes the one-year provision of the statute of frauds narrowly, applying it to "only those agreements that exclude, by their very terms, the possibility of performance within one year." *Schmidt v. Wells Fargo & Co.*, No. 17-cv-01555-RBJ, 2018 WL

1522609, at *3 (D. Colo. Mar. 28, 2018). Here, there appears to be some dispute regarding whether the alleged agreement to compensate Plaintiff monthly was oral only or both oral and in writing. *See* [Doc 28 at 4–5; Doc. 34 at 7–11]. However, such dispute makes no difference at this juncture because, regardless of the type of agreement at issue, the court reaches the same conclusion that Plaintiff's Claim Six states a plausible claim for breach of contract.

First, as discussed above, dismissal based on the statute of frauds at this stage would only be appropriate if it was clear from the face of the operative pleading. *See McDavid Bros. Aviation v. Bd. of Cty. Comm'rs of Pitkin Cty.*, No. CIV. A. 84-C-1435, 1984 WL 1447, at *2 (D. Colo. Sept. 13, 1984). Mr. LaPlante has not met this standard here. Plaintiff alleges that Defendant made oral promises to pay Plaintiff $3,300 a month in September 2019, February 2020, and in the fall of 2020. *See* [Doc. 149 at ¶¶ 62–63, 73, 77, 134–35]. Defendant argues that Plaintiff's alleged "oral renewal" of contract is irrelevant because "[s]imply shifting the *beginning* date forward does not save the claim because Plaintiff has not alleged the required *end* date for the purported contract." [Doc. 34 at 7 (emphasis in original)]. However, Defendant's argument overlooks whether the alleged oral agreements *could have* been performed within one year. *See Schmidt*, 2018 WL 1522609, at *3 ("The Colorado Supreme Court construes the one-year provision narrowly, applying it to 'only those agreements that exclude, by their very terms, the possibility of performance within one year.'") (citation omitted); *cf. id.* ("[T]he parties do not dispute that the alleged employment contract in this case was an oral agreement … Thus 'the issue is whether, based on the undisputed facts, the employment contract could have been fully performed according to its terms within one year.'") (citing *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 658 (D. Colo. 2005)). Additionally, while Defendant finds issue with the fact that Plaintiff does not provide an end date for each such agreement, [Doc. 34 at 7], the cases cited by Defendant do not

support the conclusion that Plaintiff must identify an end date in the Complaint to avoid dismissal based on the statute of frauds. *See* [Doc. 34 at 7 (citing *Gill-Mulson v. Eagle River Fire Prot. Dist.*, No. 11-cv-01896-RBJ-KLM, 2013 WL 258745, at *3 (D. Colo. Jan. 23, 2013) (dismissing breach of contract claim where the "[p]laintiffs plainly allege[d] that defendant agreed to continue their employment for at least two years") and *Schmidt*, 2018 WL 1522609, at *3 ("[P]laintiff's complaint expressly pleads that his employment agreement contemplated a five-year term.")].

Second, even if Plaintiff did not allege an oral agreement, Plaintiff nevertheless alleges that "Defendant relayed that he wanted to pay Mr. Mullenix $3,300 a month" and this intention "was put into the business budget." [Doc. 49 at 135]. Defendant's argument that "the writing does not satisfy the Statute of Frauds because the business plan and budget were not signed by Mr. LaPlante" is unavailing here. [Doc. 34 at 5]. Indeed, neither Party has submitted the trust documents at issue for the court's review. In any event, when reviewing the sufficiency of a complaint, a court presumes all of the plaintiff's factual allegations are true and construes them in a light most favorable to the plaintiff. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). Thus, I must accept as true Plaintiff's allegation that Defendant put in writing his intention to compensate Plaintiff on a monthly basis. Further, at this stage of the litigation, Plaintiff is not required to submit potential evidence it might present at trial in support of his claims. *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* Accordingly, Plaintiff's failure to attach documents in support of its allegation that Defendant agreed to compensate Plaintiff on a

monthly basis is not fatal to Plaintiff's breach of contract claim at this stage.  For these reasons, the court **DENIES** Defendant's Motion to Dismiss.[4]

## CONCLUSION

For the reasons stated herein, this court respectfully **ORDERS** that:

(1)   Defendant's Partial Motion to Dismiss Plaintiff's Claim Nos. 2, 3, 5, and 6 [Doc. 19] is **DENIED**.

DATED:  October 19, 2021

BY THE COURT:

*Nina Y. Wang* (signature)

Nina Y. Wang
United States Magistrate Judge

---

[4] In so ruling, this court does not pass on whether Defendant can substantively prevail on the affirmative defense of the statute of frauds at summary judgment for either count of breach of contract, or whether Plaintiff can ultimately prevail on either count at trial.