IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF COLORADO

Civil Action No.  21-cv – 01670- NYW

TRAVIS

MULLENIX,

      Plaintiff/Counterclaim Defendant,

v.

DEMIAN LAPLANTE,

      Defendant/Counterclaimant.

---

**PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S MOTION TO DISQUALIFY DR. MELINDA FOUTS AS AN EXPERT WITNESS**

---

Plaintiff Travis Mullenix ("Mr. Mullenix") responds that Dr. Melinda Fouts ("Dr. Fouts") should be allowed to testify as an expert as Defendant waived his privilege as to Dr. Fouts when he filed his counterclaims and affirmative defenses, inserting treatment with Dr. Fouts into this case and because barring Dr. Fout's testimony would be hugely prejudicial to Mr. Mullenix.

### I.  INTRODUCTION

Dr. Melinda Fouts, Ph.D. Psychology, M.A. Psychology, was endorsed as a non-retained expert who counseled Mr. Mullenix individually, Defendant individually, and Mr. Mullenix and Defendant in joint couples counseling. *Exhibit*

*1.* All counseling sessions occurred from November 2020 until early 2021. The counseling and treatment revolved solely around the trauma surrounding abuse, assaults, and battery, which is the subject of both Plaintiff and Defendant's claims. On January 31, 2021, Dr. Fouts authored a letter for the district attorney prosecuting Defendant for crimes of domestic violence against Mr. Mullenix. *See Exhibit 2.* In doing so, she described that she believed she could waive the confidentiality of Defendant for the safety of Mr. Mullenix.

On August 4, 2021, Defendant filed a Motion to Strike as he felt the public disclosures of his treatment with Dr. Fouts were inappropriate. At the time, Defendant had not answered Mr. Mullenix's complaint or filed counterclaims. Mr. Mullenix did not oppose the removal of Defendant's admissions to Dr. Fouts from his complaint because it had no material effect on the case. This Court addressed this motion orally on the record when both parties were before the Court on September 24, 2021. The Court questioned Plaintiff if they opposed amending the complaint. Plaintiff did not oppose the amendment at that time; thus, the Court orally granted the motion and asked Plaintiff to refile an Amended Complaint.

Defendant implicitly waived their privilege with Dr. Fouts upon filing counterclaims in this case. On October 4, 2021, Defendant filed their counterclaims, in part, for Mr. Mullenix's "psychological abuse" of Defendant. Def. Countercl. ¶ 1. In these Counterclaims, Defendant pleaded claims for Mr. Mullenix's Assault and Battery of Defendant. Defendant failed to distinguish what damages he is claiming, stating that he is claiming, "damages to be decided at trial." Def. Countercl. ¶ 55, and ¶ 60. Defendant lastly filed their Answer to Mr.

Mullenix's complaint on November 2, 2021. In that answer, Defendant claimed affirmative defenses that implicated Dr. Fouts's testimony, namely that Mr. Mullenix failed to mitigate his damages and that Mr. Mullenix's damages were pre-existing. Def. Answer Affirmative Defenses ¶ 12 and ¶ 15.

Defendant now asserts that he never waived his confidentiality privilege as to Dr. Fouts's. However, by filing claims of assault and battery and claiming explicit psychological abuse, he implicitly waived any privilege to the treatment providers whose treatment is directly related to those damages. Defendant does not want Dr. Fouts to testify because her proposed testimony negates Defendant's claims and affirmative defenses.

At this point, discovery is not completed. Written discovery requests about Defendant's injuries are pending. Defendant's deposition is planned but has yet to be completed. To date, Defendant has not disclosed any medical records to Mr. Mullenix for any mental or physical injuries.  Upon information and belief, Defendant hopes to base his damages for general pain and suffering on his testimony alone, even though he treated with Dr. Fouts for the trauma related to his allegations of domestic violence.

## II.  QUESTION PRESENTED

Can Defendant prevent his therapist, who provided therapy directly related to Defendant's damages and claims, from testifying based on the fact that Defendant refuses to waive his confidentiality privilege explicitly?

### III. LEGAL STANDARD

Defendant misstates the test for disqualification of an expert based on privilege. He almost exclusively cites federal law. In personal injury cases that are removed to federal court based on diversity, a federal court must apply federal procedural law and state substantive law." Payless Shoe Source, Inc. v. W/J Commercial Venture, L.P., No. 10-4156-KGS, at *6 (D. Kan. August 8, 2012). The disqualification of an expert based on privilege is a substantive issue and should be decided in the forum state's law.

There is sparse caselaw federally and in Colorado regarding the disqualification of an expert based on the expert's knowledge coming from privileged information. The only binding caselaw in Colorado involves the disqualification of an expert based on improper use of privileged information based on a conflict of interest. Mitchell v. Wilmore, 981 P.2d 172 (Colo. 1999). City of Westminster v. M.O.A., Inc., 867 P.2d 137, 140 (Colo. App. 1993). Citing Wang Laboratories, Inc . v. Toshiba Corp., 762 F. Supp. 1246 (E.D. Va. 1991).

The test for disqualification is whether 1. The expert gleaned information based on a confidential relationship and 2. Whether the party waived this privilege at any point in time. City of Westminster at 140 (Colo. App. 1993). Under this framework, "[a]ffirmative answers to both inquiries compel disqualification," but "disqualification is likely inappropriate if either inquiry yields a negative response." Mitchell v. Wilmore, 981 P.2d 172, 175 (Colo. 1999).

Further, the party seeking disqualification has the burden of proving both the grounds for disqualification and the non-waiver of any confidentiality being asserted. *Id.*

### IV. LEGAL ARGUMENT

Mr. Mullenix does not dispute the confidential nature of Defendant and Dr. Fouts's relationship.

He simply states that this privilege was waived when the Defendant filed his counterclaims and affirmative defenses. Additionally, Mr. Mullenix states that disqualification of Dr. Fouts testimony will severely prejudice Mr. Mullenix in his ability to fairly litigate this case.

**1. Defendant Waived his privilege with Dr. Fouts with his Assault and Battery Claims, damages for these claims, and Defendant's affirmative defenses of Mr. Mullenix's failure to mitigate damages and pre-existing condition.**

Every Colorado case decided on the implicit waiver of privilege bodes in Mr. Mullenix's favor, stating that a party implicitly waives their privilege with a treatment provider when that treatment relates to the party's claims, damages, or affirmative defenses. *See Alcon v. Spicer*, P.3d 735 (Colo. 2005); *See Weil v. Dillon Cos., Inc.* 109 P.3d 127 (Colo. 2005); *See Hoffman v. Brookfield Rupub. Inc.,* 87 P.3d 858 (Colo. 2004); *See Johnson v. Trujillo*, 977 P.2d, 152 (Colo.

1999); *See Samms v. Dist. Court, Fourth Jud. Dist*, 908 P.2d 520, 526 (Colo. 1995); *See Bond v. Dist. Ct., 682 P2.d 33* (Colo. 1984); Fields v. McNamara, 189 Colo. 284, 540 P.2d 327 (1975).

The physician-patient privilege and privilege relevant to mental health records are embodied in C.R.S. 13-90-107(1)(d) and (g). However, it has been the longstanding rule in Colorado that when a plaintiff or counter-plaintiff alleges a physical or mental condition as the basis for a claim of damages, they implicitly waive these privileges with respect to that condition. *Samms v. Dist. Court, Fourth Jud. Dist*, 908 P.2d 520, 526 (Colo. 1995); *Fields v. McNamara*, 189 Colo. 284, 540 P.2d 327 (1975).

More recently, the Colorado Supreme Court defined the implicit waiver for related or non-related treatment records. In *Weil v. Dillon Cos., Inc.* 109 P.3d 127 (Colo. 2005), *Johnson v. Trujillo*, 977 P.2d 152, 153 (Colo. 1999), and most recently in *Alcon v. Spicer,* P.3d 735 (Colo. 2005), the Defendant's sought to discover medical records unrelated to the specific claims for injuries being made in those actions. In these cases, all privilege related to claims, damages, or affirmative defenses, like the privilege owed to Dr. Fouts was waived. The Courts addressed other situations about circumstantial or tenuous privilege, which is instructive here.

In *Weil*, the damaged party suffered injuries in an auto accident, including a fractured pelvis, a fractured sacrum (tailbone), and a torn rotator cuff in his left shoulder. *Weil* at 128. During pretrial discovery, the damaged party acknowledged the waiver of privilege and provided the opposing party "with

medical records, reports, and bills covering the period of time from the date of the accident through the end of treatment." *Id.* The injured party conceded that they had implicitly waived privilege for treatment that occurred after the alleged date of injuries. *Id.* In written discovery, opposing party then asked for the injured party to disclose an unlimited release of medical information from three years prior to the injury through the present and asked the injured party to sign a blanket medical release for fourteen separate healthcare providers. *Id.* In addressing the lawfulness of motion to compel all medical records and blanket releases from 3 years prior, the Court ruled that general pain and suffering did not open the door to a blanket release of information and that privilege is waived only when "the privilege holder has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense."

Similarly, in Alcon, the injured party conceded that medical privileges relating to medical treatment after the incident were waived. *Alcon* at 736. This was a case involving a car accident with claimed lower back pain, shoulder, and neck pain injuries. *Id* at 737. The injured party provided the opposing party with "a list of ten health care providers from whom she sought treatment after the accident and furnished [the opposing party] with releases authorizing disclosure of their records pertaining to her treatment." *Id.* The injured party solely objected to unrelated psychotherapist records from years prior to the incident and all pharmaceutical records from 10 years before the incident. *Id* at 738. The injured party sought a protective order barring this information and had an evidentiary hearing before the Court. *Id. at 739.* The *Alcon* court ruled that "A waiver, which

is really a form of consent to disclosure, can be implied through a patient's conduct as well as obtained by express authorization to the release of information. " *Id.* One way a party can establish waiver is by showing that the privilege holder "has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense. *Id*. Only medical records "wholly" unrelated to the claims, damages, or affirmative defenses should be barred. *Id*. The Court further required the injured party to disclose all records with a privilege log stating the unrelated nature of the records, so the opposing party could parse out the privilege in an individual matter. *Id* at 741.

In *Johnson*, the injured party claimed damages from an automobile accident for an injury to her head, neck, back, left wrist, and left shoulder. *Johnson* at 152. The injured party claimed damages, in part, for pain and suffering damages of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life. *Id.* at 153. Through depositions, it came to light that the injured party filed for divorce four years after the auto accident. *Id.* She had been going to couples counseling and therapy around the time of her separation and divorce. The opposing party argued that the injured party had waived privilege to the divorce counselor and psychotherapist by claiming general pain and suffering damages. The injured party claimed that the, "(1) she was not alleging that the accident had caused her to suffer from a "mental condition"; (2) the treatment and counseling she had received from her psychiatrist and marriage counselor was related to her depression and divorce and not to the accident; (3) she was not seeking compensation for any of this treatment from the Respondents; and (4) she

did not intend to call either the psychiatrist or the marriage counselor to testify in the case. Arguing that divulging the records would cause her substantial harm, Johnson asked the trial court to issue a protective order concerning her treatment and counseling records." *Id.* at 154. The *Johnson* Court upheld the waiver because the psychotherapy treatment was unrelated to the injured parties claims or damages. The Court stated in the rationale for their decision, "As it happens, [the injured party] has sought counseling for some unrelated emotional issues at various times in her life. *Id.* at 157. The [injured party] has not made any independent tort claims for either intentional or negligent infliction of emotional distress, in which the question of liability would turn on her mental condition and the cause of it. She did not seek counseling for any emotional issues related to the accident." *Id.*

In the *Johnson* holding, the court distinguished its *Bond v. Dist. Ct*. 682 P.2d 33 (Colo. 1984) ruling that the privilege as to mental health records had been waived, in noting that in *Bond* the plaintiffs had injected their mental condition as a basis of their damages. The *Bond* ruling is much more persuasive herein that the injured party fell off a truck and sued the operator of the truck for negligence. The injured party went to counseling due to the trauma she suffered from her injuries. The injured party opposed the disclosure of reports because treatment was ongoing, and they believed disclosure of the treatment would undermine the sense of trust built in psychotherapy. Ultimately, the court ruled, as it should here, "The rationale for a waiver in the context of a lawsuit is that it is inconsistent for the patient-litigant to base a claim upon his/her mental condition and then use the

physician or psychologist privilege to prevent the opposing party from obtaining and presenting any conflicting evidence pertaining to that condition. See Clark, 668 P.2d at 10; Quinn, The Physician-Patient Privilege in Colorado, 37 U. Colo. L. Rev. 349 (1965); Annot., 44 A.L.R.3d 24, 51 (1972); 81 Am. Jur. 2d Witnesses § 273 (1976). The petitioners concede they have injected their mental condition into the case as the basis of a claim. Therefore, we hold that the petitioners have waived their privilege by requesting an award of damages for mental suffering and expenses for psychiatric care. However, we conclude that the respondent court abused its discretion by denying the petitioners' motion for a protective order without balancing the respective interests of the parties."

In this matter, Mr. Mullenix and Defendant dated from 2017 until December 2020. Both parties allege abuse by the other party. In the first line of Defendant's Counterclaim's he states Mr. Mullenix subjected him to psychological and physical abuse. In his motion to strike, the Defendant also admits that he saw Dr. Fouts from November 2020 for about a month and a half. Mr. Mullenix additionally saw Dr. Fouts. Both men went to counseling sessions to resolve any abusive issues, the same issues that form the basis of Defendant's Counterclaims. Defendant provides no other rationale for this treatment to the court.

Additionally, Mr. Mullenix saw Dr. Fouts to work on the trauma he faced from Defendant's physical and psychological patterns of abuse. Much of what Dr. Fouts would testify about is solely related to communications gleaned from Mr. Mullenix.

On January 31, 2021, Dr. Fouts authored a letter regarding her professional opinion regarding Mr. Mullenix and Mr. LaPlante. *Exhibit 2.* That letter is instructive to her role and how related her treatment is to Defendant's counterclaims, damages, and affirmative defenses. In that letter, she wrote in part, "Travis and Demian came to see me for couple's counseling November 2020 with weekly meetings until the incident at the Hickory House." *Id.* In their treatment for their relationship trauma, "They were implementing the tools I gave them and were making progress. However, what wasn't being addressed was what I believe falls under the category of domestic violence." *Id.* "In the short time working with them as a couple, they shared with me their experiences since coming to this area. In learning their story, it became clear to me this couple fell into the category of Domestic Violence, Demian being the batterer and Travis the victim." *Id.*

Dr. Fouts' treatment was solely and directly related to the basis of Defendant's claims and affirmative defenses. Her treatment was a direct response to the trauma that resulted from hostile and volatile incidents between Mr. Mullenix and Defendant in 2020.

Defendant now tries to contend that since he's not asking for the repayment of his approximately six sessions with Melinda Fouts, and just general pain and suffering damages, he has not waived his privilege. This is despite the fact that the trauma that was treated with Dr. Fouts, is the exact same trauma that forms the basis of his pain and suffering claim. This attempt at circumventing of the Colorado Court's rationale regarding implied waiver is laughable.

The test in *Weil*, *Alcon, Johnson,* and former caselaw is clear that if the privilege is related to the formation of the claim, damages, or affirmative defense, then the privilege is explicitly waived. Dr. Fouts's counseling is not treatment that is tangentially related, like a blanket release for prior records in *Weil*, like or pre-existing mental health records release in *Alcon*, or like divorce records in *Johnson.* Again, Defendant does not even try to claim he saw Dr. Fouts for any other reason than the alleged abuse and trauma that form the basis of his claims and damages. The defendant tries to circumvent this logic by stating that we won't ask for the hundreds of dollars he paid for this treatment, but rather will seek the likely thousands of dollars for general pain and suffering related to that alleged trauma.

Similar to the non-contested and contested medical privilege waived in *Weil, Alcon, Johnson,* and *Bond;* Defendant's treatment with Dr. Fouts was simultaneous to the claims alleged. Defendant's counterclaims involve two incidents on November 9, 2020 and December 14, 2020. Defendant. Def. Countercl. ¶ 16, ¶ 24, ¶ 26, ¶ 27, ¶ 29, ¶ 24, ¶ 53, and ¶ 57. Dr. Fouts counseling did not occur years prior to the alleged incidents or years after, it was literally the 6 weeks between Defendant's allegations of assault and battery. It was over the six weeks in 2020 that form that basis of the complaint.

Additionally, this treatment is not ongoing. Defendant ceased treatment from Dr. Fouts in Mid-December, 2020. Unlike the injured party in *Bond,* Defendant cannot claim that waiver of his privilege would hinder the further

treatment for trauma that he's receiving. To date, Defendant has not disclosed any medical records to Mr. Mullenix for any injuries mental or physical.

As formed the rationale in *Bond v. Dist. Ct*, Mr. Mullenix cannot effectively defend against Defendant's Counterclaims of Assault and Battery and against Defendant's counterclaims that Mr. Mullenix failed to mitigate his damages and that Mr. Mullenix's trauma was pre-existing without Dr. Fouts testimony. Defendant wants to use his trauma that formed the basis of his treatment with Dr. Fouts as both a sword and a shield, and he shouldn't be able to have it both ways. Additionally, Mr. Mullenix cannot do anything the combat the affirmative defenses Denfendant pleads that Mr. Mullenix failed to mitigate his damages or had pre-existing conditions. The only medical professional with to opine on this topic is Dr. Fouts because Dr. Fouts is Mr. Mullenix's primary treatment provider.

As Defendant has asserted claims of Battery and Assault with pain and suffering from trauma as a result, it implicitly waives the treatment connected with it so that Mr. Mullenix can effectively combat these claims. Similarly, as Defendant has pleaded affirmative defenses for pre-existing conditions and a failure to mitigate damages, it has in turn opened the door to an implicit waiver of privilege with Dr. Fouts.

2. **Disqualification of Dr. Fouts would be hugely unfair to Mr. Mullenix.**

Again, this is a substantive issue controlled by Colorado Law, however, in the case that this Court finds Defendant's argument about fairness compelling, as Defendant states: Federal courts "must consider whether disqualification would be unfair to the affected party . . . and would promote the integrity of the legal system." *Excel Jet*, 2009 WL 1194936, at *8 (citing *Hewlett-Packard Co. v. E.M.C. Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004)). Disqualification of Dr. Fouts would be hugely prejudicial to Mr. Mullenix because it would disable him from effectively combating Defendant's claims for damages involving trauma or pain and suffering from alleged assaults or battery. Ultimately, it was Dr. Fouts that made the decision to write a letter regarding her opinions of Defendant on January 31, 2021. It was Dr. Fout's confidentiality privilege to waive, and as she stated to Mr. Mullenix, she thought she was able to do that for his safety.

Defendant largely relies in his analysis on the case *Excel-Jet, Ltd. v. U.S.*, Civil Action No. 07-cv-02181-WYD-BNB, (consolidated with 08-cv-01218-WYD-BNB), at *8, which should only be persuasive authority in the Court's decision. In this case, the Plaintiff consulted with a retained expert about the mechanics of a plane and then ultimately dismissed that expert. No counterclaims were filed and no affirmative defenses were raised. Defendant subsequently endorsed that expert for trial. In this case, the Court looked at what the Defendant knew when he then in turn retained the expert, as opposed to retaining a separate expert to analyze the liability in their case. *Id* at 8. In coming to that conclusion, the federal court looked at the fairness of the Defendant's ability to hire another expert to opine on the same topic.

In this case, Dr. Fouts is not a retained expert or hired professional to produce a legal opinion like in *Excel Jet Ltd.* No payments have ever been made to Dr. Fouts for any of her opinions in this or any related legal matter. She is the treating physician of Mr. Mullenix and Defendant.

Barring her testimony as an expert witness will be hugely prejudicial to Mr. Mullenix because he cannot simply hire another physician to opine on the trauma he dealt with from November 2020 through early 2021. Further, disqualifying Dr. Fouts would be hugely prejudicial because it would undermine Mr. Mullenix's ability to combat Defendant's allegations made in his Counterclaims and the affirmative defenses pled. As a non-retained expert, Dr. Fouts' opinion is irreplaceable.

Additionally, there is no public policy rationale sufficient for barring her testimony. We are still early in litigation. Defendant was able to retain his own expert to combat Dr. Fouts' opinion. Additionally, Dr. Fouts made the call to release the letter authored on January 31, 2021. She claimed to Counsel that she did this to protect a victim of domestic violence, Mr. Mullenix. Public policy supports the reporting of domestic violence incidents to protect victims from further abuse. Without Dr. Fouts' reporting, Defendant likely would not have pleaded guilty for a crime of domestic violence and faced treatment for it.

## V. CONCLUSION

The treatment Defendant sought with Dr. Fouts and the trauma addressed through that treatment formed the basis for Defendant's counterclaims of Assault and Battery and are the subject of Defendant's affirmative defenses. As such, this

Court should find that Defendant implicitly waived any confidentiality privilege to Dr. Fouts when he filed his Counterclaims and Answered Mr. Mullenix's complaint. As such, Dr. Fouts should be allowed to testify as a non-retained expert in this case.

Dated this 2nd day of December

_____
Michael Fox
Kalamaya Goscha
133 Prospector Rd. Suite 4102x
Aspen, CO 81611

## **CERTIFICATE OF SERVICE**

        I certify that on December 2, 2021, I electronically filed and served the foregoing Plaintiff's First Set of Interrogatories to Demian Laplante to the following e-mail address:

Daniel Graham,
Sean Sollis,
Markus Funk,
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400
DGraham@perkinscoie.com
MFunk@perkinscoie.com
Ssollis@perkinscoie.com

_____

Michael Fox