**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01670-NYW

TRAVIS MULLENIX,

      Plaintiff/Counter Defendant,

v.

DEMIAN LAPLANTE,

      Defendant/Counter Claimant.

---

**EMERGENCY MOTION TO RESTRICT ACCESS TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISQUALIFY DR. MELINDA FOUTS AS AN EXPERT WITNESS FOR PLAINTIFF (DOCS. #61, #61-1, #61-2)**

---

Defendant Demian LaPlante ("Mr. LaPlante") hereby files this Emergency Motion to Restrict Access to Plaintiff's Response to Mr. LaPlante's Motion to Disqualify Dr. Melinda Fouts as an Expert Witness for Plaintiff (the "Response") and Exhibits 1 and 2 thereto (Docs. #61, #61-1, and #61-2).

Plaintiff Travis Mullenix ("Plaintiff") has endorsed Dr. Fouts, the former group/family therapist of Mr. LaPlante and Plaintiff, as an expert witness to testify to legally privileged, deeply personal information disclosed during confidential therapy sessions involving Mr. LaPlante, Plaintiff, and licensed therapist Dr. Fouts. (Doc. #61-1, at 1 ("We anticipate [Dr. Fouts] will testify *about the psychological treatment that she administered to . . . [Mr. LaPlante]*.") (emphasis added).) The Court previously struck this same material from Plaintiff's Complaint as privileged and inadmissible. (*See* Doc. #47.) Plaintiff, nonetheless, persists in his

efforts to bring facially therapist-privileged information into this case, necessitating Mr. LaPlante's filing of the Motion to Disqualify.

The Motion to Disqualify seeks to disqualify Dr. Fouts as an expert witness for Plaintiff because Mr. LaPlante (1) had an objectively reasonable belief that he established a confidential relationship with Dr. Fouts; and (2) in fact disclosed confidential information to Dr. Fouts. (*See generally* Doc. #56.) The District of Colorado has held that, under these circumstances, the expert should be disqualified. *See Excel Jet, Ltd. v. United States*, 2009 WL 1194936, at *2 (D. Colo. May 1, 2009). Mr. LaPlante filed his Motion to Disqualify as restricted at Level 1, with a corresponding publicly available version, with redactions of specific references to Mr. LaPlante's therapy sessions and treatment. This was in accordance with the Court's prior order addressing this same issue. (*See* Doc. #24, at 5.)

Plaintiff, by contrast, has now elected to *publicly* file his Response in opposition to Mr. LaPlante's Motion to Disqualify - *without* redactions. As of this writing, then, courtesy of Plaintiff, anyone can review and download the entire unredacted therapist-patient privileged letter that is at the heart of the present dispute, and which this Court has already declared to be confidential. Plaintiff's Response, moreover, addresses the specifics of therapist-privileged material that Mr. LaPlante disclosed to Dr. Fouts (to which Plaintiff has endorsed Dr. Fouts to testify); Exhibit 1 to the Response is Plaintiff's Expert Disclosure (which itself reveals such information); and Exhibit 2 to the Response is the Fouts Letter (which this Court has previously ordered restricted at Level 1).

Plaintiff's decision to publicly file these pleadings not only further damages Mr. LaPlante's privacy interests (*see* Doc. #50, ¶¶ 43-50), but is also in flagrant violation of this

Court's prior order.  This Court, after all, has already restricted identical information—specifically, the Fouts Letter, which the Response quotes from directly and attaches as an exhibit—reasoning that "[Mr. LaPlante's] privacy interests here warrant restriction of highly sensitive information related to his therapy treatment."  (Doc. #24, at 5.)  Pursuant to that prior order, Plaintiff should have filed the Response and Exhibit 1 as restricted at Level 1, with corresponding publicly available versions "with redactions of specific references to Mr. LaPlante's therapy sessions and treatment."  (*Id.*)  Exhibit 2 is privileged in its entirety; therefore, redaction is not practicable, and it likewise should have been filed as restricted at Level 1.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel certify that they conferred in good faith with Plaintiff's counsel regarding this motion.  Upon being immediately contacted by undersigned counsel about the issue, Plaintiff's counsel has reserved his substantive "waiver" arguments, but, as of this filing, has declined to formally commit to not opposing the instant motion, despite multiple email communications and a telephonic conference with undersigned counsel in which counsel sought to emphasize the serious harm and anguish Plaintiff's conduct was causing Mr. LaPlante.  So, while Plaintiff's counsel ultimately may choose to not oppose the instant motion,[1] it is his conduct that has put Mr. LaPlante in the regrettable situation of knowing that his deeply personal materials are publicly available over the weekend.[2]

---

[1] Mr. LaPlante reserves his right to seek Rule 11 sanctions against Plaintiff's counsel, including but not limited to attorneys' fees expended in drafting the instant motion, given Plaintiff's counsel's flagrant disregard of the Court's prior order and the ongoing harm to Mr. LaPlante's privacy interests.  Although undersigned counsel understands that Plaintiff's counsel may

## LEGAL STANDARD

D.C.COLO.LCivR 7.2(c) sets forth the standard for restriction of filings. A motion to restrict must:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and

(5) identify the level of restriction sought.

---

disagree with the Court's prior order granting in part Mr. LaPlante's motions to restrict (Doc. #24) in light of Mr. LaPlante filing his counterclaim, the burden is on Plaintiff to petition the Court to modify its prior order. To put a finer point on it, Plaintiff should not be able to publicly file material that the Court already has ruled should be restricted, in violation of a clear Court order to Mr. LaPlante's detriment, without consequence. Nor should Mr. LaPlante be forced to pay his counsel to continue litigating this issue *ad nauseum*.

[2] Mr. LaPlante's counsel shortly after reviewing Plaintiff's Thursday evening filing laid out the impropriety of Plaintiff's conduct and demanded immediate action on Plaintiff's part. Plaintiff's conduct, regardless of whether intentional or merely reckless, resulted in Mr. LaPlante's counsel having to immediately prepare the instant Motion. Plaintiff's counsel, for his part, was asked to do nothing more than to review it and agree or disagree to its bottom-line request. Plaintiff's counsel, upon receiving the draft Motion, however, rejected Mr. LaPlante's reasonable and explicit request and indicated that he intended to respond by Monday (December 6). As expressed in prior communications to Plaintiff's counsel, however, Mr. LaPlante is concerned that Plaintiff's counsel's actions in procuring the privileged letter in the first place, unsuccessfully seeking to make it public, seeking to call the author as an "expert witness," and now simply putting it in the public domain, reflect, at best, a serious disregard for Mr. LaPlante's privacy interests and this Court's prior orders. Notably, Plaintiff's counsel has previously threatened that Mr. LaPlante "faces substantial risk . . . in the media" if the case continues. Against this backdrop, it would be unreasonable for Mr. LaPlante to agree to make the filing of this Motion reliant on Plaintiff counsel's self-selected schedule, particularly when the law is as clear, and the misconduct as unambiguous, as here.

-4-

D.C.COLO.LCivR 7.2(c).

"Courts have long recognized a common-law right of access to judicial records, but this right is not absolute." *JetAway Aviation, LLC v. Bd. of County Com'rs of County of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (internal quotations omitted). Courts may, in their discretion, "seal documents if the public's right of access is outweighed by competing interests." *Id.* (internal quotations omitted). "To overcome this presumption against sealing, the party seeking to seal records must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *Id.* (internal quotations omitted). The Tenth Circuit has "previously recognized that the privacy interest inherent in personal medical information can overcome the presumption of public access." *United States v. Dillard*, 795 F.3d 1191, 1205-06 (10th Cir. 2015) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1135-36 (10th Cir. 2011); *Russell v. Lanier*, 404 F. App'x 288, 289 n. 2 (10th Cir. 2010)).

This Court previously has held that "[Mr. LaPlante's] privacy interests here warrant restriction of highly sensitive information related to his therapy treatment." (Doc. #24, at 5.) The Court instructed the parties to redact "specific references to Mr. LaPlante's therapy sessions and treatment" and concluded that "redaction of any specific references to information contained in [the Fouts Letter], Paragraphs 202 through 204 of the Complaints, and/or conversations between the Parties and Dr. Fouts . . . strikes the appropriate balance between Mr. LaPlante's privacy interests and the public interest in access to ligation materials." (*Id.*)

## ARGUMENT

1.    **Because the Response and Exhibits 1 and 2 thereto (Docs. #61, #61-1, #61-2) address privileged/confidential information shared during therapy sessions with a licensed therapist, they should be restricted.**

Below, Mr. LaPlante addresses how each factor set forth in Local Rule 7.2(c) weighs in favor of restricting access to the Response and Exhibits 1 and 2 thereto (Docs. #61, #61-1, #61-2).   Local Rule 7.2(a) expressly permits assigning restricted status to information that is to receive restricted status by statute.   Pursuant to Colorado statute, in turn, certain information contained in the Response, Exhibit 1, and Exhibit 2 (Docs. #61, #61-1, #61-2) is privileged/confidential, and, therefore, should be restricted at Level 1.

**Factor 1: Identification of documents to be restricted.**

Mr. LaPlante is requesting that Docs. #61, #61-1, #61-2 be restricted.

**Factor 2: The interest to be protected outweighs the presumption in favor of public access.**

The Response, Exhibit 1, and Exhibit 2 (Docs. #61, #61-1, #61-2) address highly sensitive and personal privileged/confidential information shared during sessions with a licensed therapist.   As a result, the Response, Exhibit 1, and Exhibit 2 require restriction at Level 1.

Colorado statutory authority, as well as the settled caselaw interpreting it, expressly prohibit a licensed therapist from disclosing (i) confidential communications made by a client and (ii) advice given to a client:

> A licensee, registrant, or certificate holder shall not disclose, without the consent of the client, any confidential communications made by the client, or advice given to the client, in the course of professional employment.

C.R.S. § 12-245-220(1); *see also* C.R.S. § 13-90-107(1)(g) (precluding examination of a licensed therapist regarding any communications made by a client and any advice given by the therapist).

Colorado statutory authority also explicitly prohibits disclosure of information shared during a group therapy session, such as the couples counseling sessions at issue here, by *any* of the participants:

> *Any person* who has participated in any therapy conducted under the supervision of a licensee, registrant, or certificate holder, *including group therapy sessions*, shall not disclose any knowledge gained during the course of the therapy without the consent of the person to whom the knowledge relates.

C.R.S. § 12-245-220(1) (emphasis added); *see also* C.R.S. § 13-90-107(1)(g) (precluding examination of a group therapy participant regarding any knowledge gained during a group therapy session).

The bottom-line purpose of the privilege is "'to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation' that might be caused by the disclosure of information imparted by the doctor or therapist during the course of consultation for treatment." *Johnson v. Trujillo*, 977 P.2d 152, 155 (Colo. 1999) (quoting *Clark v. District Court,* 668 P.2d 3, 8 (Colo. 1983)). The privilege, once it attaches, "prohibit[s] not only testimonial disclosures in court but also pretrial discovery of information within the scope of the privilege." *Clark*, 668 P.2d at 8.

Here, on October 22, 2021, Plaintiff endorsed Dr. Fouts as an expert witness in this case. Plaintiff's expert disclosure announces Plaintiff's intent to call Dr. Fouts to testify about "*the psychological treatment that she administered to . . . [Mr. LaPlante];*" "her opinions as to whether domestic violence was occurring between Plaintiff *and Defendant;*" and "*admissions that were made to her by Defendant* that form the basis of her physiological analysis *of Defendant's trauma.*" (Doc. #56-1, at 1-2 (emphasis added).) This sort of content is the very

-7-

type of information that is supposed to be protected from disclosure by C.R.S. §§ 12-245-220(1) and 13-90-107(1)(g).

Despite the obvious therapist-patient privileged nature of the information to which Plaintiff has endorsed Dr. Fouts to testify, and despite this Court's prior Order striking identical information from Plaintiff's Complaint as privileged and inadmissible (*see* Doc. #47), Plaintiff has refused to withdraw Dr. Fouts as an expert witness. Further, undersigned counsel has attempted to persuade counsel for Plaintiff, through successive emails supported by extensive case citation and analysis, that endorsing Dr. Fouts as an expert witness to testify against her former patient at trial (including as to information that she learned solely through privileged and confidential counseling sessions) is, based on the clear statutory authorities and caselaw (including this Court's prior order), facially improper. Plaintiff remained unpersuaded, so we were compelled to file the Motion to Disqualify.

Plaintiff's Response argues that Mr. LaPlante purportedly "waived" the therapist-patient privilege by filing his counterclaim against Plaintiff; therefore, he contends, it was proper for Plaintiff to endorse Dr. Fouts as an expert witness to testify against her former patient. As more fully explained in Mr. LaPlante's Motion to Disqualify, Plaintiff's Response wholly lacks merit.[3]

---

[3] More specifically, the Colorado Supreme Court has held that "a party does not sufficiently inject his or her mental condition into the case so as to constitute waiver merely by seeking damages under a general claim of mental suffering which is incidental to the physical injuries underlying the suit." *Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 863 (Colo. 2004). Here, Mr. LaPlante is not in any of his causes of action seeking damages for any psychiatric treatment provided by Dr. Fouts. (*See generally* Doc. #50.) Nor has Mr. LaPlante asserted any independent tort claims that could put his mental state at issue, such as intentional or negligent infliction of emotional distress. Finally, Mr. LaPlante does not intend to call an expert to testify as to the nature and extent of any emotional distress that Mr. LaPlante may have suffered incidental to his physical injuries.

(*See* Doc. #56, at 12.)   Nonetheless, because the Response discusses the specifics of the privileged and confidential material to which Plaintiff has endorsed Dr. Fouts to testify; because Exhibit 1 to the Response is Plaintiff's Expert Disclosure (which itself reveals such information); and because Exhibit 2 to the Response is the Fouts Letter (which this Court has previously ordered restricted at Level 1), the Response, Exhibit 1, and Exhibit 2 require restriction at Level 1.   Further, because the Response, Exhibit 1, and Exhibit 2 discuss privileged/confidential information from therapy sessions involving Mr. LaPlante (who is not a public figure), Mr. LaPlante's interest in protecting that information outweighs the presumption in favor of public access.   (*See* Doc. #24, at 3 ("Because the Complaints contain privileged and confidential information from Mr. LaPlante's therapy sessions with a licensed therapist, he argues, his interest in protecting that sensitive information outweighs the presumption in favor of public access. . . .   This court respectfully agrees insofar as it finds that [Mr. LaPlante's] privacy interests here warrant restriction of highly sensitive information related to his therapy treatment.") (internal citations omitted).)

> **Factor 3: Serious injury would result absent restriction.**

If the Response, Exhibit 1, and Exhibit 2 (Docs. #61, #61-1, #61-2) are not placed on Level 1 restriction, then Mr. LaPlante's confidential/privileged information derived from therapy sessions will continue to be publicly available.   This would result in further serious injury to Mr. LaPlante because it would mean that his confidential/privileged information will continue to be open to public view.   Such an outcome would carry with it the very embarrassment and humiliation that the therapist-patient privilege is intended to prevent. *Johnson*, 977 P.2d at 155.

**Factor 4: Plaintiff should file publicly available versions of the Response and Exhibit 1 that redact specific references to Mr. LaPlante's therapy sessions and treatment.**

If the Response and Exhibit 1 are placed on restriction at Level 1, Plaintiff should be ordered to file publicly available versions of the Response and Exhibit 1 that redact specific references to Mr. LaPlante's therapy sessions and treatment. This is in accordance with the Court's previous clear instruction to redact "specific references to [Mr. LaPlante's] therapy sessions and treatment" and that "redaction of any specific references to information contained in [the Fouts Letter], Paragraphs 202 through 204 of the Complaints, and/or conversations between the Parties and Dr. Fouts . . . strikes the appropriate balance between Mr. LaPlante's privacy interests and the public interest in access to litigation materials." (Doc. #24, at 5.)

Exhibit 2, by contrast, which is the Fouts Letter itself, is privileged in its entirety, and, pursuant to this Court's prior order, should be restricted without an accompanying publicly filed redacted version. (*Id.* at 4.)

**Factor 5: Requested level of restriction.**

Mr. LaPlante requests that Docs. #61, #61-1, and #61-2 be restricted at Level 1.

**CONCLUSION**

For the foregoing reasons, Mr. LaPlante requests that the Court place Docs. #61, #61-1, and #61-2 at Level 1 restriction.

DATED this 3rd day of December, 2021.

Respectfully submitted,

**PERKINS COIE LLP**

By: *s/ Sean B. Solis*
     Sean B. Solis
     SSolis@perkinscoie.com
     T. Markus Funk
     MFunk@perkinscoie.com
     Daniel Graham
     DGraham@perkinscoie.com
     1900 Sixteenth Street, Suite 1400
     Denver, CO  80202-5255
     Telephone:  303.291.2300
     Facsimile:  303.291.2400

**Attorneys for Defendant Demian LaPlante**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Michael Fox
> Kalamaya Goscha
> 133 Prospector Road, Suite 4102x
> Aspen, CO  81611
> michael@kalamaya.law
>
> *Attorneys for Plaintiff*

By: *s/ Sean B. Solis*

    Sean B. Solis
    Perkins Coie LLP
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400
    SSolis@perkinscoie.com

    **Attorneys for Defendant Demian LaPlante**